UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIELLE MONTOUR, Individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VENISTAT LLC D/B/A VENISTAT,<br><br>Defendant. | ECF CASE<br><br><br>No.: _____<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

INTRODUCTION

1.      Plaintiff Danielle Montour, who is legally blind, brings this civil rights action against Defendant VeniStat LLC d/b/a VeniStat ("Defendant") for its failure to design, construct, maintain, and operate its Website, https://venistatmobilelabs.com/ (the "Website"), to be fully accessible to and independently usable by Plaintiff Montour and other blind or visually-impaired people. Defendant denies full and equal access to its Website.

2.      Plaintiff Montour, individually and on behalf of others similarly situated, asserts claims under the Americans With Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL") against Defendant.

3.      Plaintiff Montour seeks a permanent injunction to cause Defendant to change its corporate policies, practices, and procedures so that its Website will become and remain accessible to blind and visually-impaired consumers.

## THE PARTIES

4.    Plaintiff Montour is, at all relevant times, a resident of Brooklyn, New York, Kings County. As a blind, visually-impaired handicapped person, she is a member of a protected class of individuals under Title III of the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*, the NYSHRL and NYCHRL.

5.    Upon information and belief, Defendant is at all relevant times a domestic limited liability company that is organized under New York law and is authorized to do business in the State of New York.  Defendant does business in the State by marketing to and offering its services to consumers located within the State.

## JURISDICTION AND VENUE

6.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff Montour's claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and 28 U.S.C. § 1332.

7.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff Montour's NYSHRL, N.Y. Exec. Law Article 15, and NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq.*, claims.

8.    Venue is proper in this District under 28 U.S.C. §§1391(b)(1), 1391(d) because Defendant's corporate headquarters is located in this District at 353 West 48th Street, Suite 450, New York, New York and it would thereby be considered a resident of this District if it was a separate state.

9.    This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

NATURE OF ACTION

10.     The COVID-19 pandemic has shifted the world into an almost entirely online model.  Restaurants need a website for customers to place pick-up and delivery orders.  Entertainment venues are delivering performances to audiences via their Websites or other online streaming services.  Our educational institutions, including private schools and Universities have shifted to a virtual classroom with distance-learning being the new normal.  Furthermore, with store closures or capacity limitations, stores are relying on their Websites to serve as the fundamental point of contact between their business and consumers.  In order for blind and visually impaired consumers to access these Websites, they must use screen reading software.

11.     Blind and visually impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Job Access With Speech ("JAWS") is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer.

12.     For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually impaired user is unable to access the same content available to sighted users.

13.     The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 Levels A and AA of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are

well-established guidelines for making websites accessible to blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure its websites are accessible.

14.     For a website to be equally accessible to a blind or visually impaired person, under these guidelines, it should have the following:

a.     Alternative text ("alt-text") or text equivalent for every non-text element. Alt-text is an invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that screen-reading software can speak the alt-text where a sighted user sees pictures, which includes captcha prompts. Alt-text does not change the visual presentation, but instead a text box shows when the mouse moves over the picture. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics, depriving that person from knowing what is on the website.

b.     Videos have audio description.

c.     Title frames with text are provided. Absent these titles, navigating a website is particularly difficult.

d.     Webpage headings are properly labeled with the topic or purpose of the webpage, versus being blank. Screen readers read out page headings, allowing users to quickly skip to a section. Navigation is, however, very difficult without those headings.

e.     Equivalent text is provided when using scripts.

f.     Forms may be completed with the same information and functionality as for sighted persons. Absent forms being properly labeled, it is difficult

for a visually impaired or blind individual to complete the forms, as they do not know what the fields, how to input data, or what options to select (e.g., selecting a date or a size). A compliant website will, instead, provide labels or instructions when content requires user input. This includes captcha prompts, requiring the user to verity that he or she is not a robot.

g.    Information about the meaning and structure of content is conveyed by more than the visual presentation of content.

h.    Web pages do not share the same ID or title. When two or more elements on a web page share the same ID or title, it causes problems in screen readers which use IDs for labeling controls and table headings.

i.    Linked images must contain alt-text explaining the image. Absent that alt-text, a screen reader has no content to present the user as to what the image is.

j.    The purpose of each link is easily determined from how the link is labeled. Absent properly labeling each link or when no description exists, it confuses keyboard and screen-reader users as they do not know the purpose of the links. This includes captcha prompts.

k.    No redundant links where adjacent links go to the same URL address. When redundant links exist, it causes additional navigation and repetition for keyboard and screen-reader users.

l.    Portable Document Formats (PDFs) are accessible. When they are inaccessible, the visually impaired or blind individual cannot learn what information is on them.

m.      One or more keyboard operable user interface has a mode of operation where the keyboard focus indicator is discernible.

n.      Changing the setting of a user interface component does not automatically cause a change of content where the user has not been advised before using the component.

o.      The name and role of all user interface elements can be programmatically determined; items that can be set by the user can be programmatically set; and/or notification of changes to these items are available to user agents, including assistive technology.

<u>STATEMENT OF FACTS</u>

<u>Defendant, Its Website And Its Website's Barriers</u>

15.      Defendant is a concierge medical service company that offers COVID-19 testing, drug screening, DNA testing, and other medical services to consumers located in this District at their home or business. Defendant offers its concierge medical services to consumers located in New York City, including Manhattan and the Bronx, Long Island, and New Jersey. Defendant's corporate headquarters is also located in this District at 353 West 48th Street, Suite 450, New York, New York.

16.      Defendant's Website is a commercial marketplace. Customers can book in-person appointments for Defendant's concierge medical services, including its COVID-19 testing in Manhattan and the Bronx. Through the Website, customers can learn about Defendant's concierge medical services, including its COVID-19 testing, and other medical services, learn more about the different kinds of COVID-19 tests offered, read customer reviews, read clinical research, and get contact information. It is also

where potential customers can learn about Defendant's company, its mission, and get pricing information.

17.    Defendant purposely markets its concierge medial services to those in the State of New York.

18.    Plaintiff Montour visited the Website to book an in-person appointment for Defendant's COVID-19 testing in a Manhattan location.

19.    Plaintiff Montour intends to return to Defendant's Website if it becomes accessible because Plaintiff Montour would like to book an in-person appointment for Defendant's COVID-19 testing in a Manhattan location.

20.    It is, upon information and belief, Defendant's policy and practice to deny Plaintiff Montour and other blind or visually-impaired users access to its Website, thereby denying the facilities and services that are offered and integrated with its online operations. Due to its failure and refusal to remove access barriers to its Website, Plaintiff Montour and visually-impaired persons have been and are still being denied equal access to Defendant's online operations and the numerous facilities, goods, services, and benefits offered to the public through its Website.

21.    Plaintiff Montour cannot use a computer without the assistance of screen-reading software. She is, however, a proficient screen-reader user and uses it to access the Internet. She has visited the Website on separate occasions using screen-reading software.

22.    During her visits to the Website, the last occurring on or about February 25, 2022, Plaintiff Montour encountered multiple access barriers that denied her the enjoyment of the facilities, goods, and services of the Website, as well as to the goods

and services of Defendant's online operations. Because of these barriers she was unable to, substantially equal to sighted individuals:

a.      Know what is on the Website. This is due in part to the fact that images are poorly labeled with no alternative text.  For example, on the home page, all the images are not properly labeled as it does not describe the images in question. Plaintiff Montour encountered similar problems when accessing the "Services" and "About" home page as all the images were not detected by the screen reader. Additionally, Plaintiff Montour encountered problems with screen reader focus. For example, when accessing the "About" home page, screen reader focus was automatically thrown to the bottom of the home page to the "contact us" information rather than placing screen reader focus on the "About Us" heading, which gave the impression that there is no content on the home page other than the "contact us" information. Plaintiff Montour needed sighted assistance to learn that she had to adjust screen reader focus to the top of the home page so that she can learn more about the company.

b.      Navigate the Website.  Plaintiff Montour had difficulty navigating this Website and booking an in-person appointment for Defendant's COVID-19 testing at a Manhattan location. As mentioned above, links and images are not properly labeled. When accessing the "COVID Testing" home page, all the images are again not properly labeled as it does not describe the images in questions, which is not helpful to Plaintiff Montour. On the "Appointments" home page, after sighted users select their preferred type of service, sighted users can select a staff member to administer their test. However, after Plaintiff Montour clicked on "COVID-19 Expedited RT-PCR In-Home Concierge Service (With Insurance)," the screen reader detects the list of staff members, but these

options are not labeled as "clickable" and therefore she needed sighted assistance to know that she can select a particular staff member by clicking on their name. Plaintiff Montour encountered problems with the form on the "Book Appointment" home page. When entering her payment information, and then clicking the "Book Appointment" link, she kept getting an "error" message. When sighed users complete the form, and if some information is missing or incorrect, it is apparent to sighted users what the error is. However, she kept getting an "error" message and screen reader focus was not directly placed on the "error," and therefore there is no way for Plaintiff Montour to know what the error is. Plaintiff Montour encountered this same issue several times, making it difficult to complete the booking process. Because Plaintiff Montour encountered problems completing the booking form, she ultimately abandoned the process and was unable to book an in-person appointment for Defendant's COVID-19 testing.

23.    Plaintiff Montour was denied full and equal access to the facilities and services Defendant offers to the public on its Website because she encountered multiple accessibility barriers that visually-impaired people often encounter with non-compliant Website:

        a.    Images are not properly labeled.

        b.    Content inserted with CSS is not available to people who turn off style sheets, and is not read by some screen readers.

        c.    Documents titles are blank.

        d.    Don't use CSS animations that run for more than 5 seconds without giving the user a way to turn them off.

        e.    Elements are not properly labeled.

  f.  Text and background colors do not have enough contrast.

  g.  The CSS outline or border style on elements makes it difficult or impossible to see the dotted link focus outline.

  h.  Text and background colors do not have a 7:1 contrast ratio.

  i.  Link use general text which doesn't explain link purpose.

<u>Defendant Must Remove Barriers to Its Website</u>

24. Due to the inaccessibility of its Website, blind and visually-impaired customers such as Plaintiff Montour, who need screen-readers, cannot fully and equally use or enjoy the facilities and services Defendant offers to the public on its Website. The Website's access barriers that Plaintiff Montour encountered have caused a denial of his full and equal access in the past, and now deter her on a regular basis from accessing the Website. These access barriers have likewise deterred her from visiting Defendant's Website and taking advantage of its medical concierge service and enjoying it equal to sighted individuals.

25. If the Website was equally accessible to all, Plaintiff Montour could independently navigate it, learn about Defendant's medical concierge service, get recommendations and book an in-person appointment, as sighted users can.

26. Through his attempts to use the Website, Plaintiff Montour has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

27. Because simple compliance with the WCAG 2.1 Guidelines would provide Plaintiff Montour and other visually-impaired consumers with equal access to the

Website, Plaintiff Montour alleges that Defendant has engaged in acts of intentional discrimination, including, but not limited to, the following policies or practices:

a.    Constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiff Montour;

b.    Failing to construct and maintain a website that is sufficiently intuitive to be equally accessible to visually-impaired individuals, including Plaintiff Montour; and,

c.    Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually impaired consumers, such as Plaintiff Montour, as a member of a protected class.

28.    Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

29.    Title III of the ADA expressly contemplates the injunctive relief that Plaintiff Montour seeks under 42 U.S.C. § 12188(a)(2).

30.    Because its Website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiff Montour seeks a permanent injunction under 42 U.S.C. § 12188(a)(2) requiring Defendant to retain a qualified consultant acceptable to Plaintiff Montour to assist Defendant to comply with WCAG 2.1 guidelines for its Website:

a.    Remediating the Website to be WCAG 2.1 compliant;

b.      Training Defendant's employees and agents who develop the Website on accessibility compliance under the WCAG 2.1 guidelines;

c.      Regularly checking the accessibility of the Website under the WCAG 2.1 guidelines;

d.      Regularly testing user accessibility by blind or vision-impaired persons to ensure that Defendant's Website complies with the WCAG 2.1 guidelines; and,

e.      Developing an accessibility policy that is clearly disclosed on Defendant's Website, with contact information for users to report accessibility-related problems.

31.     Although Defendant may currently have centralized policies on maintaining and operating its Website, Defendant lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually impaired consumers.

32.     Without injunctive relief, Plaintiff Montour and other visually impaired consumers will continue to be unable to independently use the Website, violating its rights.

33.     Defendant has, upon information and belief, invested substantial sums in developing and maintaining its Website and has generated significant revenue from the Website. These amounts are far greater than the associated cost of making its Website equally accessible to visually impaired customers.

34.     Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

CLASS ACTION ALLEGATIONS

35.     Plaintiff Montour seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website and as a result have been denied equal access to Defendant's Website and its concierge medical services during the relevant statutory period ("Class Members").

36.     Plaintiff Montour seeks to certify a State of New York subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the State of New York who have attempted to access the Website and as a result have been denied equal access to Defendant's Website and its concierge medical services during the relevant statutory period ("New York Subclass Members").

37.     Plaintiff Montour seeks to certify a New York City subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York who have attempted to access the Website and as a result have been denied equal access to Defendant's Website and its concierge medical services during the relevant statutory period ("New York City Subclass Members").

38.     Common questions of law and fact exist amongst the Class Members, New York Subclass Members and New York City Subclass Members:

          a.     Whether Defendant's website is a place of "public accommodation";

          b.     Whether Defendant's Website is a commercial marketplace;

          c.     Whether the Website is a "public accommodation" or a service or good "of a place of public accommodation" under Title III of the ADA;

d.      Whether the Website is a "place or provider of public accommodation" or an "accommodation, advantage, facility or privilege" under the NYSHRL or NYCHRL;

e.      Whether the Website denies the full and equal enjoyment of their services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating Title III of the ADA; and

f.      Whether the Website denies the full and equal enjoyment of their services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYSHRL or NYCHRL.

39.     Plaintiff Montour's claims are typical of the Class Members, New York Subclass Members and New York City Subclass Members: they are all severely visually impaired or otherwise blind, and claim that Defendant has violated Title III of the ADA, NYSHRL or NYCHRL by failing to update or remove access barriers on its Website so it can be independently accessible to the visually impaired individuals.

40.     Plaintiff Montour will fairly and adequately represent and protect the Class and Subclasses' interests because she has retained and is represented by counsel competent and experienced in complex class action litigation, and because she has no interests antagonistic to the Class or Subclasses. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class and Subclasses, making appropriate both declaratory and injunctive relief with respect to Plaintiff, the Class and Subclasses.

41.     Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class and Subclass Members

predominate over questions affecting only individuals, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

42.     Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

<u>FIRST CAUSE OF ACTION</u>
VIOLATIONS OF THE ADA, 42 U.S.C. § 12181 *et seq.*

43.     Plaintiff Montour, individually and on behalf of the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

44.     Title III of the ADA prohibits "discriminat[ion] on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

45.     Defendant's Website is a commercial marketplace and a public accommodation under Title III of the ADA, 42 U.S.C. § 12181(7). Its Website is a service, privilege, or advantage of Defendant's online operations. The Website is a service that is integrated with its online operations.

46.     Under Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

47.     Under Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

48.     Under Title III of the ADA, unlawful discrimination also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

49.     These acts violate Title III of the ADA, and the regulations promulgated thereunder. Plaintiff Montour, who is a member of a protected class of persons under Title III of the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, she has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons.

50.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff Montour requests the relief as set forth below.

<u>SECOND CAUSE OF ACTION</u>
VIOLATIONS OF THE NYSHRL

51.     Plaintiff Montour, individually and on behalf of the New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

52.     Defendant's Website is a commercial marketplace and constitutes a sales establishment and public accommodation under N.Y. Exec. Law § 292(9). Defendant's Website is a service, privilege or advantage of Defendant's online operations. Defendant's Website is a service that is by and integrated with these online operations.

53.     Defendant is subject to NYSHRL because it owns and operates its New York online operations and the Website. Defendant is a "person" under N.Y. Exec. Law § 292(1).

54.     Defendant is violating the NYSHRL in refusing to update or remove access barriers to its Website, causing its Website and the services integrated with its online operations to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public. N.Y. Exec. Law §§ 296(2)(a), 296(2)(c)(i), 296(2)(c)(ii).

55.     Readily available, well-established guidelines exist on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities and government agencies in making their websites accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating the basic components

to make its website accessible would neither fundamentally alter the nature of its business nor result in an undue burden to them.

56.     Defendant's actions constitute willful intentional discrimination against the class because of a disability, violating the NYSHRL, N.Y. Exec. Law § 296(2), in that Defendant has:

        a.      Constructed and maintained a website that is inaccessible to Class Members with knowledge of the discrimination; and/or

        b.      Constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

        c.      Failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

57.     Defendant discriminates, and will continue in the future to discriminate against Plaintiff Montour and New York Subclass Members on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Defendant's Website and its online operations under § 296(2) *et seq.* and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and the New York Subclass Members will continue to suffer irreparable harm.

58.     As Defendant's actions violate the NYSHRL, Plaintiff Montour seeks injunctive relief to remedy the discrimination, compensatory damages, civil penalties and fines under N.Y. Exec. Law § 297(4)(c) *et seq.* for every offense, and reasonable attorneys' fees and costs.

THIRD CAUSE OF ACTION
VIOLATIONS OF THE NYCHRL

59.     Plaintiff Montour, individually and on behalf the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

60.     Defendant's Website is a commercial marketplace and constitutes a sales establishment and public accommodation under the NYCHRL, N.Y.C. Admin. Code § 8-102(9), and its Website is a service that is integrated with its online operations.

61.     Defendant is subject to NYCHRL because it owns and operates its Website and its online operations, making it a person under N.Y.C. Admin. Code § 8-102(1).

62.     Defendant is violating the NYCHRL in refusing to update or remove access barriers to its Website, causing its Website and the services integrated with its online operations to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public. N.Y.C. Admin. Code §§ 8-107(4)(a), 8-107(15)(a).

63.     Defendant's actions constitute willful intentional discrimination against the Subclass because of a disability, violating the NYCHRL, N.Y.C. Admin. Code § 8-107(4)(a) and § 8-107(15)(a,) in that it has:

        a.      Constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

        b.      Constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c.    Failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

64.    As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff Montour and the New York City Subclass Members because of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of its Website and its online operations under § 8-107(4)(a) and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and the New York City Subclass will continue to suffer irreparable harm.

65.    As Defendant's actions violate the NYCHRL, Plaintiff Montour seeks injunctive relief to remedy the discrimination, compensatory damages, civil penalties and fines for each offense, and reasonable attorneys' fees and costs. N.Y.C. Admin. Code §§ 8-120(8), 8-126(a).

FOURTH CAUSE OF ACTION
DECLARATORY RELIEF

66.    Plaintiff Montour, individually and on behalf the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

67.    An actual controversy has arisen and now exists between the parties in that Plaintiff Montour contends, and is informed and believes that Defendant denies, that its Website contains access barriers denying blind customers the full and equal access to the goods, services and facilities of its Website and by extension its online operations and membership services, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities

Act, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.* prohibiting discrimination against the blind.

      68.    A judicial declaration is necessary and appropriate now in order that each of the parties may know its respective rights and duties and act accordingly.

<u>PRAYER FOR RELIEF</u>

      WHEREFORE, Plaintiff Montour respectfully requests this Court grant the following relief:

      a.    A preliminary and permanent injunction to prohibit Defendant from violating Title III of the ADA, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Admin. Code § 8-107, *et seq.*, and the laws of New York;

      b.    A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its Website into full compliance with the requirements set forth in Title III of the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

      c.    A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by ADA, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.*, N.Y.C. Admin. Code § 8-107, *et seq.*, and the laws of New York

      d.    An order certifying the Class and Subclasses under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and his attorneys as Class Counsel;

      e.    Compensatory damages in an amount to be determined by proof, including all applicable statutory damages, punitive damages and fines;

   f.  Pre- and post-judgment interest;

   g.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

   h.  Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Montour demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
   March 4, 2022

       LIPSKY LOWE LLP


       <u>s/ Christopher H. Lowe   </u>
       Christopher H. Lowe
       420 Lexington Avenue, Suite 1830
       New York, New York 10017-6705
       212.392.4772
       chris@lipskylowe.com

       *Attorney for Plaintiff*